Council, or not Council, Law Clerk, please call the next case. 3-15-0722 Elizabeth Ray v. Workers' Compensation Commission May it please the Court. Council, my name is Heather Calvert and I represent the appellant in this case, Ms. Elizabeth Ray. Gentlemen, this is a case involving an undisputed work accident that resulted in injuries to Ms. Ray, which included her low back, her cervical joint region. The treatment ultimately resulted in a surgical recommendation. The employer in this matter argues that a subsequent fall, occurring approximately seven months later, was an intervening accident that thereby broke the chain of causation. This case was arbitrated. Causal connection between the accident and the recommended surgery was awarded. It was The main issue on appeal is whether the decision of the Commission is against the manifest weight of the evidence when a single therapy note of an alleged fall that required no medical treatment, after surgery was already prescribed, constituted an intervening accident. Well, herein lies the problem, according to the Commission, whether a single accident requiring no medical treatment. It's clear, I think you'd have to concede, the Commission didn't believe the claimant at all in minimizing this fall. The claimant testified, to tell us if this is not correct, that she never went to the emergency room. She never had any treatment. That clearly was impeached, wasn't it? There's medical records that say that she arrived at the Methodist Medical Center, the emergency room, and she was treated there, correct? It is correct in part, Your Honor. There was a note at the, I believe it was Methodist Medical, either Proctor or Methodist, that she arrived, but she left without receiving treatment. Did she deny going there? That's vastly different than arguing over the treatment. She said she never went to the emergency room at all. Your Honor, it would be my argument that she simply, she did not receive treatment that, you know, a couple years later, it did not stick out in her mind. But are you answering the question? Did she or did she not deny ever going to Methodist Medical Center on the day of the fall? I believe that she testified that she did not recall going for treatment, Your Honor. And then you've got Doctors Soriano, is it, and Phillips, who gave an opposite opinion on the causal connection, versus was it Kubin? That's correct, Your Honor. And why couldn't the Commission believe their opinions over Kubin? Well, for one thing, Your Honor, Dr. Soriano has admitted that he had never performed any SI joint fusions. He didn't have any experience with SI joint treatment whatsoever. Dr. Kubin's credentials are that he has performed several SI joint fusions, that he is a pioneer in progressive treatment of SI joint fusions. So I believe that, you know, the Commission found, or I'm sorry, the arbitrator found his opinion to be more persuasive than that of Dr. Soriano. Well, that's true enough. But the Commission, who's the ultimate finder of credibility and weight, went the opposite way. Well, let me ask a question about that. The employers, IMEs, they opined that there was no causation at the outset. Is that right? That there was no causation on the SI joint, period? I believe that he denied causation. That's correct, Your Honor. However, I mean, the Commission must have found causation initially. Otherwise, what's the point of independent intervening clause? That's correct, Your Honor. So the Commission must have rejected those opinions of the employers' doctors that said there was no causation at all. That's correct, Your Honor. And the issue on appeal for what we're here for today is whether or not an intervening accident broke that chain of connection, not whether there was causal connection. Right. The Commission must have found that there was a causal connection at the time of the accident. That's correct. Otherwise, there would be no reason for them to later find there's an independent intervening clause that broke the chain of causation that they must have found. That's correct, Your Honor. So what did the employers' IME doctors say about the intervening accident? I mean, was there a difference of opinion between the doctors on the independent intervening clause? Or did they address that? I do not believe, if I could please refer to my brief regarding Dr. Soriano's opinions. I mean, what I'm trying to determine is what were their competing medical opinions about? There were competing medical opinions about causation at all, but the Commission must have rejected the employers' doctors on that. So my question is, were there competing medical opinions about whether or not there was an independent intervening clause that broke the chain? Correct. And if I could step back, Dr. Phillips, in reviewing, Dr. Phillips did find that there was a need for the SI joint fusion. He agreed with Dr. Kuby on that note. And my understanding that Dr. Soriano simply felt that the SI joint fusion wasn't necessary. He also admitted that he did not perform the certain clinical examinations which would give positive findings for an SI joint diagnosis. Again, I agree with you, Your Honor, that they found that causation existed between the accident and the injury. Again, the only issue here on appeal is whether or not the recommended surgery was an, or I'm sorry, whether the fall of December of 2012 was an intervening accident. Let me ask you this on that topic. The Commission found Klayman's testimony to be less than credible with regard to the fall, correct? Yes, Your Honor. Then the Commission did cite, tell me if this is wrong, that noted that outside of the physical fall, and that is of early November 2012, Dr. Kuby still thought Klayman might be able to avoid surgery. That's before the fall, right? I believe the recommendation by Dr. Kuby, Your Honor, was that she go through another course of physical therapy, and if that did not help, then she would, they would consider surgery. And that all changed after the fall, according to Kuby, right? I believe that, Your Honor, I believe what she had was a fluctuation in her symptoms. They were already, she was almost done with the physical therapy at the time that the December fall occurred. After the second SI joint injection, that's when he said, we'll see how much relief this provides her. We'll send her through another course of physical therapy. If that doesn't resolve anything, then I think she's looking at a surgical, she's looking at a potential surgical intervention, and I think that's what's critical here, Your Honor, because if you look at Vogel, one of the factors that they considered was, was there a change in the recommendation for treatment? Here we didn't have a change for recommendation that was already prescribed, that was already brought up. Kuby never said anything about her being able to avoid surgery before the fall. Is that your position? I believe he said that they would attempt physical therapy to see if that would resolve her symptoms. Right. And did his opinion change after the fall? I believe that he said that the symptoms, her physical therapy did not resolve the symptoms, so therefore they would move forward with an MRI. I think he noted a fluctuation in her symptoms, but I do not believe that he ever made record of the actual fall aggravating the condition to the point where it required surgery. He didn't even consider it. In giving his opinion, did Kuby review any records pertaining to this fall that she went to the hospital on? I believe he looked at doctor, or I'm sorry, his physical therapy notes by doctor, physical therapy that she was receiving at his office. Right, but he didn't look at any of the records when he heard she had anything to do with the fall, did he? Your Honor, I don't recall if he had seen the ER records at that point. He was aware of the fall. She had contacted his office. She had talked to Dr. Kuby about the fall, and I believe it was their office that recommended that she go to the ER. You know, Ms. Ray did not take it upon herself. She contacted Dr. Kuby just to make sure that he was aware of the fall. She went to the emergency room. She didn't stick around, so evidently her pain wasn't enough to warrant sticking around and receiving treatment. Again, I believe there's one doctor's note that makes mention of the fall in Dr. Kuby's records. So again, I think the critical thing when you look at Vogel is the fact that some of the factors... I'm still trying to get to the point here. Was there any medical support, was there any medical opinion to support the Commission's conclusion that this was an independent intervening accident? Did any doctor say, you know, that was a new injury? No, there is no medical evidence. I mean, the Commission just said, you know, you had a fall, you said you didn't get any treatment, you said it didn't change any of your symptoms, we don't believe you, therefore independent intervening cause. But doesn't there have to be evidence that there was a change in her injury, that there was, you know, something else happened to break the chain? There's no medical evidence here that shows this was anything other than the natural consequences of the original injury. That is correct, Your Honor. That is correct. There was no... I mean, what's the evidence of that other than them saying, we just don't believe what you're telling us? There is no evidence, Your Honor. There was no change in her symptoms. So that gets back to my question about the employer's IMEs. None of them ever said, in our opinion, everything changed after this other fall. Their opinions were based on whether there was any causation at the outset. Is that right? That's correct, Your Honor. Okay. Potentially your opponent would say it could be inferred, potentially that the commission properly inferred that there was a medical change. Assuming that's the argument, how would you respond? I would... That you don't need direct medical evidence. I'm sorry, Your Honor. Then maybe I'll just reserve this for opposing counsel. But Justice Stewart asked you, is there any direct medical evidence suggesting an independent intervening cause? And you indicated you did not believe that the record contains that. Could the commission infer an independent intervening cause based strictly on the evidence of the fall and testimony in regards to, I think it was whether or not surgery would be needed. Can the commission infer an independent intervening event absent direct medical testimony? No. Again, Your Honor, there was no change in the nature of her symptoms. She did have a flare-up of pain. There was already, and it's critical to note here, there was already a recommendation for the surgery. She did not note any new symptoms. She did not notate anything other than a flare-up of the pain. There was a recommendation for the MRI, I believe, within a day or two of the fall. But I believe that was after she had already been in physical therapy for some time. And Dr. Kuby had recommended that they would go in that direction even if the fall had not occurred. So again, if you look to the case law that we have before us, Your Honor, there is nothing here to indicate that this would have been the type of accident that would have broken the chain of causation. We had no change in treatment. We had no change in new symptoms. We already had a recommendation for surgical intervention, and we are asking that you reverse the decision of the circuit court and find and enter an award in accordance with the argument here today and reinstate the arbitrator's award. Thank you, Counsel. May it please the Court, Counsel, my name is Brett Taylor, and I represent the appellee at the Solid Christian Skylines. If I could, there are some questions that were posed to my colleague here that if I could, I would like to try and respond to. Justice Hudson, you had questions regarding the testimony of the claimant and the Commission's finding that it wasn't credible. It went beyond that her testimony that they did not find credible went beyond just saying that I did not seek treatment. Her testimony was that she merely fell on her knees and scuffed her knees. She had no increase in symptoms, and she did not which is what the Commission relied upon in finding that her testimony was not credible shows more. On November 30, 2012, when she contacts Dr. Coopy's office. This is after the fall? This is the day of the fall. Day of the fall. The day of, yes. She doesn't report falling on her knees. She reports falling on her, landing, landing on her right side, the side that's at issue here, the right side joint. She reported sharp right-sided pain, worse than she's had in two months. She was advised that the pain is so severe that you need to get to the emergency room. That's what she did. The pain was severe enough to send her to the emergency room. Unfortunately, against her doctor's advice at the hospital, she didn't want to stay any longer because the wait was so long to get in to see the doctor. Now, I think if you look three days later, just three days after this fall on November 30, 2012, she goes to physical therapy at Dr. Coopy's office. Now, when she's at Dr. Coopy's office, she again acknowledges she fell and again landed on her right side. Both of these three days apart, same history, completely different than what she testified to. She admitted going to the emergency room. She admitted missing work due to the pain. Here's, I think this goes to maybe the question, Justice Brewer, that you were asking. For the first time in any point in time since the date of injury, when she is talking to her physical therapist on the 3rd, December 3rd, she is reporting a new complaint. It's a neurological complaint. What she's reporting is numbness in her right foot. Numbness so significant that she was having difficulty even driving her car because she couldn't depress the gas pedal. Now, let me stop there and ask you a question. Did Coopy prescribe the surgery to resolve that neurological complaint? I would argue that he did. I mean, does he say that anywhere? Does he say that anywhere? I mean, or is he prescribing the same surgery that he had discussed as a possibility before this so-called independent intervening? Here's, I have a different look. And I think the commission as well. At this point, we're not really talking about something to take care of radicular symptoms, are we, as far as the surgery was proposed? Dr. Coopy actually testified that you can have a radicular component with that site joint dysfunction and that it can address that. He does testify to that. Will you agree with me that having a subsequent accident where you just have more pain in the same location is not an independent intervening cause of your injury? I mean, take Vogel. The guy had three subsequent motor vehicle accidents which caused further pain and symptoms and problems with his lower back. And it was held not to be independent intervening cause. And I agree. And the reason for that is, okay, you already got a lower back injury, let's say. You fall down and you have more pain in your lower back. That's expected. But it's not something new. Right. And I think, you know, actually I'm glad you brought up the Vogel case because that was another point I wanted to make as well. In Vogel, in Teska, in Global Products, I think all three of those cases are distinguishable from this case. And it's going to tie into your first question regarding the prescribed surgery, okay, that counsel has argued existed prior to November 3, 2012. I would argue that that was not prescribed. It was not prescribed. Vogel, Teska, Global Products, all involved cases where you had an injury, work-related injury, a surgery, a surgery that failed, all three of them. Diagnostic post-surgical finding in Vogel and Global Products, they were failed fusions. In Teska, it was a post-surgical recurrent disc herniation. The condition that was being treated, then you had the intervening or the alleged intervening injury. The condition that was at issue that was being treated was the same condition that existed prior to the fall because before these intervening injuries occurred in these three cases, there was a failed surgery. And it was diagnostically, you could see it, you could visualize it. And the court found in all three of those cases, essentially what they were saying was they would have needed that second surgery or actually in Global Products, I think it would have been a third surgery. They would have needed that additional surgery even if the alleged intervening injury had never occurred. You're saying that was not the case here. Kube, prior to the fall, was still recommending physical therapy as an alternative to surgery, right? Correct. That changed after the fall, right? That's correct. And there was additional diagnostic studies done on that, too. If you look at that November 6, 2012 medical visit, which is the last medical visit Dr. Kube had, okay, before this intervening injury or alleged intervening injury, he was, we're going to If this conservative treatment doesn't, I mean, we've seen these many, many times. If the conservative treatment doesn't work, then she may be someone that needs surgery down the road. There is no identification as to the type of surgery. There is no identification as to when the surgery would occur. She certainly wasn't deemed a candidate for surgery. She was a candidate for additional physical therapy. How do you reconcile your position with the language in Global that says so long as a blood-poor relationship exists between the original event and the subsequent condition, the employer remains liable? Isn't that what we're looking at here? Again, yes. Well, no, I disagree with that. I don't think that is what we're looking at here. In Global products, that was a situation where they already had a failed fusion before the intervening injury even occurred. And that was the surgery that was being prescribed that was at issue. It was a refusion of that failed fusion. That person was going to need that refusion even if that intervening injury had never occurred. That's the but-for, I believe. Well, how can you say that, in this case, the original injury was not at least a cause of the need for the surgery? I mean, the intervening cause has to completely break the chain of causation. If it remains a cause, then it's compensable, right? Do you agree with that? That is the law. That's the law. Yes. Now, let me ask you the troubling part to me. Did any of the doctors who testified in this case opine about whether or not, in this accident at home, she received a totally new injury or anything about, did they opine anything about independent intervening cause? Yes. And what did they say? I can tell you Dr. Soriano did not because his IME did not occur until August of 2012, so that would have been before this event even occurred. Dr. Phillips, who is also a well-recognized expert on SI joint dysfunction. And he was the employer's IME. He did a record review. That is correct. He actually testified that both the babysitting incident in July, which the commission said that was not an intervening injury, as well as that November 30, 2012 event at home were both intervening causes. He testifies to that? Well, it was in his report. I mean, his report? Yeah, I'm sorry. And did that go into evidence? Yes, it did. And what did he say, what was the basis of that, you know, as far as what was new? Well... I mean, did he say, as you just told us, that because she had this new symptom of numbness? Or is that one of the things? That's one of the things. The other thing is the lumbar MRI that was performed. But then it was ordered four days after this. The interesting thing about Dr. Cooley, when he goes to, and we've seen this before, it's not just this case. If you've seen his testimony on SI joints in the past, it's the same. He doesn't make decisions on SI joint dysfunction or SI joint fusions based upon diagnostic studies, diagnostic imaging. He relies upon, and this is what he testified to in this case, he relies upon clinical exam findings and subjective reporting of pain. That's what he uses to diagnose the condition and to suggest the surgery, okay? And this is why I'm saying there was no suggestion of an SI joint fusion before this event occurred. Because four days after, we've already talked about how she was reporting the problem with numbness in the foot on the 3rd of December. On the 4th of December was the first day she goes back to Dr. Cooley. On that date, she's now reporting a different location in the same leg of numbness. It's in the right quadricep. Because of this increase in complaints, the change in the nature of the complaints, he orders a lumbar MRI. And the reason why, and he testified to this, I think it was pages 41 to 43 of his testimony, if you want to go back and have a look at it. He was trying to ensure that the pain generator was in the lumbar spine. And it wasn't until after he got the lumbar MRI results back that he's like, okay, now we know it's the SI joint, now we're going to prescribe an SI joint fusion. He could not have identified that he needed an SI joint fusion before November 30, 2012 because he wasn't certain until after he had the lumbar MRI performed that the lumbar spine was not the pain generator. And unfortunately, National Freight talks about the four factors that we should be looking at. And in one of those, there was a change in pathology. And in many cases, you have, it's great, like a lumbar spine, cervical spine, you've got a lumbar spine. Picture before, picture after. We don't have that here. We don't have that here. So what does Dr. Kuby, if we were to believe his testimony as far as the treatment protocols, we have the symptoms, the complaints, which is what Dr. Kuby relies on in diagnosing and then suggesting the treatment, the surgery. And Dr. Kuby related all this back to the original accident? He did. Was he asked specifically about whether to fall at home at the end of November? No, he didn't. But as I think one of the other justices had mentioned, he testified he wasn't really aware of all the, of the treatment and the nature of the complaints and the nature of the fall and the spiking of the complaints. Well, he had his own records there, though. He knew what she said on December 3rd or whatever. But he didn't know before he testified. And then on cross-examination, he was made aware of that, yes. I understand. But he, he treated her on an ongoing basis. And he didn't look at, gee, she came in on December 3rd and, whoa, everything changed. I believe he said it was actually December 4th. And I think he did say everything changed because now she's got numbness in her leg that she'd never reported before. He even testified of that. She had not reported that before. It's in his deposition testimony. I mean, there were, and so that's why when you're talking about a change in pathology, something's causing the numbness that she's never had before. And it's within two to three days after the injury. I just want to get back to the original question that I asked both of you. Did any doctor say that, in their opinion, that numbness was attributable to the fall at her home? I don't know if that was specifically identified. I know he says everything's fine. She's got this. Did anybody express an opinion that that's what caused it? I think that the argument is clearly on the medical records alone. It's a temporal argument. I'm just trying to determine whether, well, that's it. I'm trying to determine whether the commission just takes, you know, okay, this was four days after she fell, so that must have been what caused it. That's what the commission did, really. That is what the commission did, yes. That plus the fact that her testimony is completely incredible as to the nature of the injury and how significant it was, the spiking of her complaints. There's one thing I would like to point out before I'm done here real quickly, if I could, because I don't think this was properly. There was a complete change in her ability to work after this as well. It's not just, you know, Dr. Kuby had her on a moderate work restriction, 35-pound occasional. Let me get this correct, if I could. It was a 35-pound occasional, 50-pound max lifting before the injury. After the injury, it was light duty, 10-pound frequent lifting, 35-pound max lifting. There are two documents that I'm going to refer you to, if I could, that I don't think were really identified in the briefs. I would like to point these out because this tells you the practical change in her ability to work. Eleven days prior to the state of injury on November 30th, so this is November 19, 2012, she had a quality of life follow-up in Dr. Kuby's office. This can be found in his records, which is Petitioner's Exhibit 10. In that record, 11 days before, she states, managing to work four days a week without flaring of pain episodes. Five days after, okay, so she saw the physical therapist on the third, she saw Dr. Kuby on the fourth, both times talking about the numbness and the tingling. So on the fifth, there is a quick note, another quick note, which is a phone call to Dr. Kuby's office from the patient. Stated, went back to work today, regular duty for four hours. The pain was so bad that she went to the proctor emergency room for a pain shot and pain prescription. So before, she's having no problems doing her regular job, working four days a week. Afterwards, the pain is so significant, she has to go to the emergency room for the second time for SI joint. She had never had to go to the emergency room for an SI joint up to this point in time. Before the fall, you're saying? Correct, correct, before the intervening fall, that is, yes. She had to go for kidney stones, but that's not an SI joint. And I think Dr. Kuby did make a good point of that. So we believe if you take the evidence in the light and most favorable to the commission's finding, we all should find that any reasonable prior effect could have found the way the commission found. We would ask that you affirm the commission's decision. Thank you for your time. Thank you, counsel. Counsel, you may reply. Your Honor, counsel was asked if Dr. Kuby was specifically asked whether or not he believed the alleged intervening accident would have changed his mind on the surgical intervention. And he specifically testified that before the fall of December 2012, that the SI joint surgery was already being contemplated as a therapeutic measure. So, again, you had asked whether he had identified that alleged fault in his testimony, and he did. Additionally, counsel made reference to the upsurge in her complaints of pain. And in Tesco, the court stated specifically that merely because a claimant experiences an upsurge of complaints doesn't mean the causal connection is broken. Additionally, in Vogel, there was reference to how just because you have a non-work-related accident that may aggravate a condition, that's irrelevant. In other words, it doesn't necessarily break the chain of causation. We concede that there was an accident here. We concede that she had gone to the emergency room after she contacted Dr. Kuby's office. What we don't agree with is the commission's finding that that broke the chain of causation. There was an upsurge of pain complaints. She did contact her doctor's office and noted, I understand there was some discrepancy in the medical records and the testimony. Again, that's something that may have been explained with the passage of time. I think that it only, it kind of emphasizes the fact that that fall did not resonate with her. It did not stick in her mind. Again, Dr. Kuby testified and counsel even admitted that Dr. Soriano, or at least he couldn't recall whether Dr. Soriano specifically addressed the issue of the alleged intervening accident. Dr. Kuby did address that issue. There is no medical evidence to indicate that this fall, or there's no medical opinion to indicate that this fall was an intervening accident breaking the chain of causation. Again, Dr. Kuby did note, he did note that she had a change in her complaints. There's nothing in his medical records indicating that after this fall, surgery is now being recommended. There's nothing in the medical records to indicate that. Again, I don't believe that this fits the legal description of intervening accident. The defendant has not met their burden of proving this. Again, if you look to the case law, none of the factors have been met. The surgical, again, going through the analysis, there was maybe a new complaint of pain, but there's no identification that that related to the SI joint injury that Dr. Kuby had been recommending the surgery for. She did have an upsurge of complaints. That's not enough to break the chain of causation. There was already a recommendation for the surgery. The only qualification was that let's see if physical therapy resolves the symptoms first. Again, I believe that the decision of the circuit court should be reversed, and the decision of the arbitrator should be reinstated, and there should be a causal connection found between the recommended surgery and the work accident. Thank you for your time today. Thank you, counsel. Both of the arguments in this matter have been taken under advisement. Good disposition shall issue. The court will stand in due process.